UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JANE DOE, individually as parent and next friend of JOHN DOE, a minor,<br><br>    Plaintiff<br><br>v.<br><br>REGIONAL SCHOOL UNIT No. 21,<br><br>    Defendant | No. 2:11-cv-25-DBH |

### RECOMMENDED DECISION ON PLAINTIFF'S MOTION FOR ATTORNEY FEES

The plaintiff, Jane Doe, moves pursuant to Federal Rule of Civil Procedure 54(d), Local Rule 54.2, and the pertinent provision of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(i)(3)(B)(i)(I), for an award of reasonable attorney fees and expenses incurred in an administrative due process hearing and in litigation in this court regarding the special education rights of her minor son, John Doe. Plaintiff's Motion for Attorneys' Fees and Costs ("Motion") (ECF No. 90) at 1. She seeks an award of $72,044.00, representing so-called "lodestar" fees, including certain reductions to account for work performed on a claim with respect to which she did not prevail. Motion at 11-16.

Defendant Regional School Unit No. 21 ("RSU No. 21") objects that the lodestar figure is too high.[1] *See generally* Defendant's Opposition to Plaintiff's Motion for Attorneys' Fees and Costs ("Opposition") (ECF No. 91). It argues that the lodestar figure should be reduced by

---

[1] The defendant does not object to the plaintiff's assertion that she is a prevailing party for purposes of a statutory award of attorney fees. Therefore, I will not address that element of the statutory test. *See Fenneman v. Town of Gorham*, 802 F. Supp. 542, 546-48 (D. Me. 1992).

1

$17,416, to $54,628, and that, to reflect the defendants' degree of success, this adjusted figure should be further reduced by 90 percent, *id*. at 15, resulting in a total award of $5,463.

For the reasons that follow, I recommend that the court award the plaintiff attorney fees in the sum of $39,874.80, reflecting an adjusted lodestar figure of $66,458.00 for work performed through the time of filing of the motion, minus 40 percent, or $26,583.20, to account for the degree of success that the plaintiff obtained.[2]

## I. Applicable Legal Standards

The IDEA "permits the award of reasonable attorney fees to a prevailing party." *Mr. & Mrs. C. ex rel. K.C. v. Maine Sch. Admin. Dist. No. 6*, 582 F. Supp.2d 65, 67 (D. Me. 2008) (citing 20 U.S.C. § 1415(i)(3)). "In IDEA attorney fee disputes, the courts generally have applied prevailing party principles from [42 U.S.C.] § 1988 cases." *Id*. To qualify as prevailing parties, IDEA litigants, like section 1988 litigants, must demonstrate that (1) they obtained relief on a significant claim in the litigation; (2) such relief effected a material alteration in the parties' legal relationship; and (3) the alteration is not merely technical or *de minimis* in nature. *See, e.g.*, *Kathleen H. v. Massachusetts Dep't of Educ.*, 154 F.3d 8, 14 (1st Cir. 1998). The party seeking a fee award bears the burden of establishing the reasonableness of the requested fee. *See, e.g., IMS Health Corp. v. Schneider*, 901 F. Supp.2d 172, 192 n.10 (D. Me. 2012).

Fee awards to prevailing parties are determined using the so-called "lodestar" method:

> When fashioning a fee award, the district court ordinarily starts by constructing what has come to be known as the lodestar. In general, the lodestar is the product of the number of hours appropriately worked times a reasonable hourly rate or rates. The party seeking the award has the burden of producing materials that support the request. These materials should include counsel's contemporaneous

---

[2] The plaintiff requested that, if the court did not grant the Motion, it schedule a hearing to determine the amount of fees and costs to be awarded. Motion at 17. I **DENY** the plaintiff's request because the parties' papers provide a sufficient basis upon which to calculate the award.

2

> time and billing records, suitably detailed, and information anent the law firm's standard billing rates. The putative payor may submit countervailing evidence. The court, usually after hearing arguments, will then calculate the time counsel spent on the case, subtract duplicative, unproductive, or excessive hours, and apply prevailing rates in the community (taking into account the qualifications, experience, and specialized competence of the attorneys involved).

*Hutchinson ex rel. Julien v. Patrick*, 636 F.3d 1, 13 (1st Cir. 2011) (citations and internal punctuation omitted).

The lodestar figure "can be reduced where the prevailing party achieves only limited success." *Mr. & Mrs. C.*, 582 F. Supp.2d at 67. *See also, e.g., Burke v. McDonald*, 572 F.3d 51, 65 n.11 (1st Cir. 2009) ("After computing the lodestar, the district court would have been within its discretion to consider an adjustment – upward or downward – based on the results obtained by taking into account Burke's claim-by-claim success, the relief obtained, and the societal importance of the right vindicated."). However, "[t]he IDEA cases adopt the principle that strict proportionality is not required in awarding fees":

> In § 1988 cases, courts have concluded that some victories, though nominal in amount, can represent a measure of success and serve a public good through the potential of future deterrent impact. What is required is that the parent achieve relief on a significant claim; that it effects a material alteration in the parties' legal relationship; and that the victory is not merely technical or de minimis.

*Mr. & Mrs. C.*, 582 F. Supp.2d at 67 (citations and internal punctuation omitted).

## II. Discussion

### A. Lodestar Calculation

RSU No. 21 seeks reductions in the plaintiff's lodestar calculation of (i) $2,586 for time at IEP meetings, advice on pre-suit issues, or entries for multiple activities that do not make clear how much time was spent on each activity; (ii) $5,740 for assertedly excessive time spent preparing a post-hearing memorandum during administrative proceedings; and (iii) $7,860 for

time spent responding to RSU 21's motion to supplement the record and to RSU 21's motion to disqualify the plaintiff's law firm.  Opposition at 5-10.

### 1.  Pre-Suit Work and Multiple Activities

As RSU No. 21 points out, Opposition at 6, this court held in 1992 that fees and costs incurred in connection with a Pupil Evaluation Team ("PET") meeting are not recoverable as part of an IDEA award, *Fenneman*, 802 F. Supp. at 545-46, a holding since codified in the IDEA, *see* 20 U.S.C. § 1415(i)(3)(D)(ii) ("Attorneys' fees may not be awarded relating to any meeting of [an] IEP [individualized education plan] Team unless such meeting is convened as a result of an administrative proceeding or judicial action or, at the discretion of the State, for a mediation described in subsection (e).").

In *Fenneman*, the court reasoned that, because "PET meetings are specifically designed to be informal meetings where parents, teachers and administrators sit down to work out an IEP by consensus if possible[,] . . . [t]reating them as part of the administrative hearing/litigation process will only encourage adversarial conduct, a result out of keeping with their purpose." *Fenneman*, 802 F. Supp. at 545-46 (footnote omitted).  This was true even though the parents asserted that their lawyer's and expert's preparation for, and attendance at, a PET meeting "was an important stage in the investigation of facts, the formation of a case theory and strategy, the shaping and narrowing of issues, and the gathering and development of evidence for use at the administrative hearing." *Id*. at 545.  Applying *Fenneman* and 20 U.S.C. § 1415(i)(3)(D)(ii), this court more recently rejected a claim for attorney time "spent advising the family on the PET process prior to the hearing request[.]" *Mr & Mrs C ex rel. KC  v. MSAD 6*, Civil No. 6-198-P-H, 2008 WL 2609362, at *2 (D. Me. June 25, 2008) (rec. dec., *aff'd in part, rev'd in part on other grounds*, Oct. 15, 2008).

The defendant characterizes the entries in the fee itemization document submitted by the plaintiff for the dates of August 25, 2010; August 31, 2010; September 1, 2010; September 10, 2010; September 16, 2010; October 1, 2010; October 5, 2010; October 8, 2010; October 13, 2010; October 19, 2010; October 20, 2010; and November 22, 2010, as "having nothing to do with the hearing officer order, or for advice to the family on issues like school field trips and other unrelated matters." Opposition at 6-7. A review of the plaintiff's attorneys' billing records suggests that the defendant may have parsed some of these entries incorrectly. Exhibit A to Opposition ("Fee Itemization") (ECF No. 90-3) at [3]-[10]. However, the plaintiff's assertion that all of these entries "contributed to the grounds for relief sought by the Plaintiff," Reply Memorandum in Support of Plaintiff's Motion for Attorneys' Fees and Costs ("Reply") (ECF No. 92) at 2, is also overstated.

Of the specified entries, those for August 25 (first entry), August 31, September 1 (second entry), September 10 (second entry), September 16 (second entry), October 1 (first entry), October 5, October 8 (first entry), October 13 (first entry), October 19 (first entry), October 20, and November 22 (second entry) are wholly or partially descriptive of services not part of or pertaining to the administrative hearing process. The plaintiff has not reduced any of these entries in connection with her claim for attorney fees.

Of this second list, the second entry for September 1, the second entry for September 16, the first entry for October 1, the entry for October 5, and the first entry for October 8 do not deal at all with the administrative hearing process. Accordingly, the $330.00 associated with those entries must be deducted from the requested lodestar amount. With respect to the remaining entries in the second list, the Fee Itemization does not clearly segregate fees related to IEP Team

5

discussions from those that are unrelated. Accordingly, the $1,986.00 associated with those entries will be deducted as well.

## 2. Post-Hearing Memorandum

RSU No. 21 next seeks a reduction to $5,740 in the plaintiff's lodestar figure, omitting what it characterizes as excessive time spent on the preparation of a post-hearing memorandum submitted to the administrative hearing officer who heard the parties' due process claims. Opposition at 8-9. RSU No. 21 submits a declaration of its attorney, Eric Herlan, reflecting that he and an associate accomplished this task in 15.8 hours. Declaration of Eric R. Herlan (ECF No. 91-1) ¶ 6. It reasons that because the defendants' attorney, Richard O'Meara, is comparably experienced, he should have been able to complete this task equally efficiently, justifying a reduction of 24.3 hours in reimbursable time (from 40.1 hours to 15.8 hours), leaving a lodestar total of $5,740 at O'Meara's hourly rate of $300. Opposition at 9.

Nonetheless, the plaintiff explains that O'Meara invested more hours because, unlike Herlan, he chose to prepare, as part of his post-hearing brief, detailed proposed findings of fact with record citations (totaling approximately 26 pages). Reply at 2-3; *compare* Administrative Record ("Record") at 922-71 *with id*. at 888-920. As the plaintiff observes, Reply at 3, the administrative record in this case was lengthy and complex. On such a record, preparing findings of fact with appropriate record citations is a labor-intensive task. The plaintiff suggests that this exercise was a valuable one, the hearing officer having adopted in whole or in part many of her proposed findings of fact. Reply at 3; *compare* Record at 922-47 *with id*. at 975-94.

However, while I noted recently in a similar case that 11.9 hours devoted to such a task was not unreasonable, O'Meara in this case billed 17.7 hours to generate approximately the same amount of proposed findings of fact (26 v. 27 pages). Recommended Decision on Defendants'

Motion for Attorney Fees (ECF No. 43), *Regional School Unit No. 51 v. John Doe*, No. 2-12-cv-29-DBH, at 6-7.  A reduction to 12 hours is necessary here, for a reduction of $1,710.

Beyond this, if one subtracts from O'Meara's total of 40.1 hours spent on the post-hearing brief the 17.7 hours devoted, in substantial part, to his preparation of proposed findings of fact, the remainder is 22.4, somewhat more than Herlan's 15.8, *see* Fee Itemization at [7]-[9], but not beyond that which I found acceptable in *RSU No. 51*.

I recommend that the fee for preparation of the post-hearing memorandum be reduced by $1,710.[3]

### 3. Motion to Supplement the Record

RSU No. 21 contends that all of the time spent by the plaintiff's attorneys opposing its motion to supplement the record should be eliminated from the attorney fee calculation. Opposition at 9.  It asserts that the plaintiff has reduced this time in her request from a total of $3,120 to $1,560, *id.*, but the plaintiff states that "[n]o recovery is sought for work . . . performed on unsuccessful efforts, such as . . . the objection to Defendant's motion for additional evidence." Motion at 16. In her reply, the plaintiff agrees that she in fact seeks to recover half of the attorney fees incurred in preparing her opposition to this motion.  Reply at 4-5.

Because the plaintiff "resisted this motion at great length and cost . . . and lost at each step in the process," the defendant asserts, "[t]he Court should cut this remaining $1,560[.]" Opposition at 9.  It offers no further argument and cites no authority in support of its position. The plaintiff responds that the information at issue was "used primarily to support [the

---

[3] RSU No. 21 does not challenge the 19.8 hours billed by O'Meara's associate in connection with the preparation of the post-hearing brief, and I accordingly do not address those charges.

7

defendant's] unsuccessful Counterclaim[,]" thereby justifying her recovery of "nearly all of the fees expended on this work." Reply at 4-5. Again, there is no citation to supporting authority.

My research has not located any authority on point. However, the plaintiff's argument, if adopted, would invite counsel to seek to recover in IDEA cases attorney fees incurred in unsuccessfully opposing, at least, motions to supplement the record, merely by arguing that the evidence ultimately admitted did not aid the opposition in obtaining a successful ultimate outcome on the issue or issues to which the evidence at issue applied, thereby requiring the court to engage in a post-judgment trial on the questions raised by such an argument. I recommend that the court decline to issue such an invitation, and that it hold that the lodestar amount sought by the plaintiff here should be reduced by an additional $1,560.

### 4. Response to Motion To Disqualify Counsel

RSU No. 21 seeks a reduction of $2,900 for work performed in responding to its motion to disqualify the plaintiff's counsel, arguing that the work had nothing to do with the IDEA claim. Opposition at 9-10. The plaintiff rejoins that the work is compensable because, without it, she would have been forced to expend resources to bring new counsel up to speed as the case was nearing its conclusion. Reply at 4. She contends that the expense was "reasonable and necessary in furtherance of this litigation." *Id*.

A "fee award should not reimburse the plaintiff for work performed on claims that bore no relation to the grant of relief." *Schneider*, 901 F. Supp.2d at 185 (citations and internal quotation marks omitted) (citation and internal quotation marks omitted). On the other hand, a "fully compensatory fee" normally "will encompass all hours reasonably expended on the litigation[.]" *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). "In assessing whether hours were reasonably expended, the relevant issue is not whether hindsight vindicates an attorney's time

expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Short v. Manhattan Apartments, Inc.*, 286 F.R.D. 248, 256 (S.D.N.Y. 2012) (citation and internal quotation marks omitted).

I am persuaded that fees incurred in opposing the motion to disqualify were reasonably expended on the litigation and bore a relation to the grant of relief.

RSU No. 21 filed its motion to disqualify the plaintiff's counsel on October 9, 2012. ECF No. 76. The plaintiff responded to that motion on November 2, 2012. ECF No. 80. On February 7, 2013, I issued my memorandum decision denying the motion to disqualify. ECF No. 85. No appeal was taken from my decision. *See* Docket *generally*.

While, as it happened, the plaintiff's response to the motion to disqualify had no effect on the outcome of the IDEA case, that turn of events was not predictable when the response was filed on November 2, 2012. On November 2, 2012, both sides had objected to the recommended decision on the merits. ECF Nos. 70 & 71. To obtain new counsel at that juncture not only would have been expensive but also might have jeopardized the plaintiff's position on the merits. The plaintiff reasonably chose to expend resources opposing the motion to disqualify to maximize her chance of success in this IDEA litigation. I recommend that fees incurred in that endeavor be allowed in full.

### B.  Adjustment for Degree of Success

RSU No. 21 finally seeks a substantial reduction to account for the plaintiff's degree of success, arguing that the plaintiff's "entire effort was geared toward preventing [John Doe] from moving from his neighborhood school . . . to the behavior program[.]" Opposition at 11. The court did not order this relief. ECF No. 88. Nonetheless, the plaintiff asserts that she "plainly prevailed and obtained nearly the full relief she sought." Reply at 5. Her assertion that she

9

prevailed in this court has not been disputed by the defendant, but her assertion that she obtained "nearly the full relief she sought" is considerably overstated.

This court "has great discretion in determining the size of a fee award granted to a prevailing party[]" in an IDEA case. *Fenneman*, 802 F. Supp. at 548. "The critical factor guiding the court's discretion is the degree of success obtained." *Id*. (citation and internal quotation marks omitted). Here, the plaintiff's claim concerning John Doe's placement was the predominant reason she sought an administrative hearing, and the predominant basis for her appeal to this court. *See* Record at 946-49, 953-67 *and* Plaintiff's Memorandum of Law (ECF No. 52) at 13-21. Concluding that the plaintiff in this case received no more than 50% of the relief she sought, and considering her successful defense against the defendant's counterclaim, I find that a 40% reduction in the lodestar figure is appropriate. *See Fenneman*, 802 F.Supp. at 548-49.[4]

### C. Costs

The plaintiff has included a claim for costs in the amount of $1,828.19 in her attorney's affidavit (ECF No-3 at [24]), although she does not discuss this claim separately in her motion or reply. The defendant has objected to this claim, but only in general terms. It asserts that the plaintiff "should be completely denied all costs associated with [her] own appeal." Opposition at 14. In addition, it contends, the plaintiff should be allowed "only a small portion of" her costs associated with her opposition to the defendant's cross-appeal. *Id.* It cites no authority in support of its position, and the remainder of the paragraph in which this argument appears addresses attorney fees in a manner that conflates costs with attorney fees.

---

[4] I reject the defendant's attempt to distinguish *Fenneman*. Reply at 5-6. There is no suggestion in the *Fenneman* opinion that it should be limited to its facts.

In any event, the defendant's opposition is sufficiently undeveloped as to be forfeited. *E.g., Crowe v. Bolduc*, 215 F.Supp.2d 233, 238 (D. Me. 2002). The fact that the plaintiff's claim for reimbursement of costs is essentially unopposed does not end the matter, however. Both Federal Rule of Civil Procedure 54(d) and this court's Local Rules 54.2 and 54.3 contemplate an application to the court for attorney fees and an application to the clerk of the court for recoverable costs. Because there is no recognizable dispute about the application for costs in this case, I recommend that the amount sought be awarded. However, counsel are hereby placed on notice that in all future cases, whether or not the amount of costs claimed by the prevailing party are disputed, separate claims for attorney fees and for costs must be submitted, and the bill of costs shall be submitted as required by Local Rule 54.3. Requests for an award of costs not submitted in the specified manner will not be considered by the court or by the clerk of this court.

### III. Conclusion

For the foregoing reasons, I recommend that the motion be **GRANTED IN PART**, to the extent that the plaintiff be awarded attorney fees and costs in the sum of $41,702.99, consisting of attorney fees in the sum of $39,874.80, reflecting an adjusted lodestar figure of $66,458.00 minus 40 percent, or $26,583.20, to account for the degree of success obtained, and costs in the amount of $1,828.19, and otherwise **DENIED**.

## *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof.   A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the district court and to appeal the district court's order.*

Dated this 8th day of August, 2013.

<u>/s/  John H. Rich III</u><br>
John H. Rich III<br>
United States Magistrate Judge